**Kenneth M. CONLEY, Petitioner**

**v.**

**UNITED STATES of America, Respondent**

**No. 01–10853–REK.**

United States District Court, D. Massachusetts.

Sept. 18, 2001.

Willie J. Davis, Davis, Robinson & White, Boston, MA, for petitioner.

S. Theodore Merritt, United States Attorney's Office, Boston, MA, for respondent.

Memorandum and Order

KEETON, District Judge.

### I. The Pending Matter

Under the terms of the ORDER of COURT of the Court of Appeals for the First Circuit in No. 00–2141, dated August 29, 2001 (filed in this case in this court as

Docket No. 134) this court must order judgment one way or the other on the "Motion to Set Aside Conviction" filed pursuant to 28 U.S.C. § 2255. (Under regular practice of the Clerk of the United States District Court for the District of Massachusetts, the petitioner's "Motion to Set Aside Conviction" was treated as a civil action and designated as Civil Action No. 01–10853–REK.)

## II. Nature of This Civil Case and Background Criminal Proceedings

As noted above, this Civil Action No. 01–10853–REK was initiated by the filing with the Clerk of this court of a document bearing the caption shown above and titled, "Motion to Set Aside Conviction" (Docket No. 1, filed May 18, 2001).

Petitioner Kenneth Conley, "pursuant to 28 U.S.C. 2255, moves that the conviction [in Criminal No. 97–10213–REK] be set aside upon the ground that there has been a denial or infringement of the constitutional rights of the Petitioner as to render the judgment vulnerable to collateral attack." Docket No. 1 at 1. The document alleges the following explanation of grounds for setting aside the conviction:

1. Petitioner, a Boston Police Officer, was charged in a three-count indictment with perjury and obstruction of justice. Pursuant to a grant of immunity the Petitioner appeared before the federal grand jury to give testimony during the investigation of an assault on Michael Cox, also a Boston Police Officer. Following his grand jury testimony, Petitioner was indicted in two counts for perjury and one count for obstruction of justice.

2. After trial by jury, Petitioner was convicted on Count One of the indictment, acquitted on Count Two, and convicted on the Count charging obstruction of justice. The judgment of conviction

was affirmed. *United States v. Conley,* 186 F.3d 7 (1st Cir.1999), *cert. denied,* 529 U.S. 1017, 120 S.Ct. 1417, 146 L.Ed.2d 310 (2000).

3. Petitioner was given a thirty-four month committed sentence. He is presently waiting to commence serving the sentence that has, to this point, been stayed.

4. Following the denial of his petition for *certiorari,* Petitioner filed a motion for a new trial. The motion was granted. *United States v. Conley,* 103 F.Supp.2d 45 (D.Mass.2000). The government appealed. By Opinion and Order dated May 11, 2001, the Order of the District Court was reversed, and the sentence imposed ordered executed.

5. The Judgment of Conviction under which Petitioner is presently restrained was obtained in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States in that exculpatory evidence was withheld from Petitioner during trial, which resulted in a verdict not worthy of confidence.

6. The pertinent facts showing the Constitutional violation are as follows:

a. Sometime after midnight, on January 25, 1995, a call for an officer down following a shooting was broadcast over the Boston Police Radio Frequency. The suspects involved in the shooting fled the scene in a gold Lexus. Police Officers from throughout the city became involved in the pursuit of the suspects.

b. The pursuit ended in a cul-de-sac in the Mattapan Section of the City of Boston. Four suspects alighted from the Lexus and attempted to flee. Three were apprehended immediately. The fourth, a man by the name of Robert Brown, was successful

in hopping over a fence and making a temporary getaway.

c. Officer Michael Cox chased Brown to the fence. The Petitioner also chased him. Cox hesitated at the fence. The Petitioner did not. When Cox made a decision to try and get over the fence, he was struck from behind, presumably by a fellow officer.

d. Once over the fence, Petitioner chased Brown for several hundred yards before apprehending him.

e. While Petitioner was chasing Brown, other officers inflicted a severe beating upon Cox. He sustained great physical damage.

f. Thereafter, a Boston Police Internal Affairs investigation was conducted. The investigation did not reveal the officers who were responsible for beating Cox. Likewise, an investigation conducted by the Suffolk County Grand Jury failed to reveal the responsible officer or officers.

g. At some point, a federal grand jury investigation was commenced. Petitioner, pursuant to a grant of immunity, appeared and gave testimony. In response to questions asked by the prosecutor, Petitioner testified that he did not see Cox chasing Brown. This answer led to Count I of the indictment charging perjury. Petitioner also testified that he did not see the assault upon Cox. This answer led to Count II of the indictment charging perjury. A third count was brought charging obstruction of justice.

h. Petitioner, in the beginning, was unaware of the state grand jury proceedings. When he became aware he realized that some of it could be exculpatory. Thereafter, he made a specific request of the court to require the prosecutor to provide him with all exculpatory testimony of witnesses. The prosecutor specifically represented that he had none in his possession.

i. In the meantime, Cox filed a civil suit in the district court against those officers he deemed to be responsible. Following the indictment of the Petitioner and shortly before trial, Cox brought a civil action against Petitioner claiming that Petitioner engaged in a cover-up and that he failed to provide medical assistance.

j. The criminal trial, which resulted in the judgment of conviction, concluded on June 10, 1998. In December of that year the civil trial commenced. The jury found that Petitioner was not liable; that he did not engage in a cover-up; nor did he fail to render assistance to Cox.

k. It was during the civil trial that Petitioner became aware of the possibility of some exculpatory evidence not being provided by the prosecution.

l. In December of 1999, Brown was indicted by the federal grand jury for two sales of a controlled substance and conspiracy. The first sale took place on May 13, 1997, one month after his federal grand jury testimony, and, the second on March 4, 1998, approximately two months before his trial testimony. The prosecution became aware of these offenses prior to the trial of the Petitioner.

m. Following denial of his petition for *certiorari*, Petitioner filed a motion for a new trial claiming newly-discovered evidence which was exculpatory. The newly-discovered evidence concerned Cox, Brown and Officer Richard Walker. It was the combination of the testimony of these three in which the First Circuit found that the evidence was sufficient to sustain the conviction.

n. The trial judge conducted a hearing on the motion for a new trial at which he directed the prosecutor to turn over to him all documents in possession of the government pertaining to the case and to delineate those which had not been provided to the Petitioner.

o. Following review of the documents provided, the trial judge found by a preponderance of the evidence that the prosecution had withheld information from the Petitioner; and, based upon the conflict in testimony at the criminal trial, the trial judge found that the withheld evidence impeded the Petitioner's ability to cross-examine particular witnesses at trial.

7. The Petitioner now asserts that the error alleged, i.e., withholding evidence favorable to Petitioner, is a fundamental defect which, if uncorrected, will result in a complete miscarriage of justice. *David v. United States,* 134 F.3d 470, 474 (1st Cir.1998), *quoting Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

8. The Petitioner asserts that the undisclosed documents, which could have been used to impeach eyewitnesses, were favorable to the Petitioner for purposes of *Brady. Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

9. The Petitioner further asserts that by withholding the documents, the prosecution deprived him of a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Strickler v. Greene, supra, citing Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Because of the foregoing, Petitioner is being restrained of his liberty in violation of the Constitution of the United States; and, he, therefore, prays that the motion be granted.

*Id.* at unnumbered pages 1–7.

The government responded (Docket No. 5, filed July 13, 2001) with a contention that this court, under the Mandate of the Court of Appeals for the First Circuit in Criminal No. 97–10213–REK, was and continues to be without authority to grant the relief requested by petitioner.

The timing of key events in the criminal proceeding is material. When the Mandate of the Court of Appeals in Criminal No. 97–10213–REK was filed in this court, the criminal proceeding was thus revived in this court. The Opinion of the Court of Appeals for the First Circuit affirming the Judgment of this court was dated July 23, 1999, a time long before Conley filed his motion for new trial. Thus, Conley's motion for new trial (Docket No. 106 in CR No. 97–10213–REK, filed March 24, 2000), on grounds of newly discovered evidence, had not been considered in that Opinion of the Court of Appeals. Also, Conley's motion for new trial was timely under Rule 33 of the Federal Rules of Criminal Procedure ("within three years after the verdict").

After hearings of record, this court granted the motion for new trial in its Opinion of June 27, 2000 (Docket No. 122). *See United States v. Conley,* 103 F.Supp.2d 45 (D.Mass.2000). The court made findings that (1) Richard Walker testified at the trial of defendant Conley that Walker went through a hole in the fence and made his way to the bottom of an incline (103 F.Supp.2d at 54); (2) when at the bottom of the incline he saw two men standing in the street, one tall (six feet or six feet two) and the other shorter (about my height, five-nine) (*id.*); (3) the prosecutor used this evidence in his closing to suggest that the taller was Conley (*id.*); (4) during testimony of March 27, 1995 to

the Internal Affairs Division (IAD) of the Boston Police Department, Walker was shown a group of photographs and with some uncertainty selected two as persons at the bottom of the incline, neither of whom was Conley (*id.*); (5) defendant Conley claims that this evidence was unavailable to Conley and his attorney at the criminal trial (*id.*); (6) this and other material evidence came out in open court in December 1998, in the later trial of a civil action "brought by Michael Cox against several officers, including the defendant" Conley, the December 1998 civil trial having occurred "some six months after the defendant was convicted" in the criminal trial (103 F.Supp.2d at 55) (internal quotations omitted); (7) even though the testimony given at the 1998 civil trial could not have been withheld by the prosecutor in a criminal trial occurring six months earlier, because it did not then exist, the defendant Conley argued in his motion for new trial and continues to press the argument now that the prosecutor had withheld, during and before the 1998 criminal trial, information that the prosecutor then had about the IAD proceedings, and if the prosecutor had made that information available to Conley and his attorney in time for use during the criminal trial, it would have made a material difference in the defense strategy, including cross-examination (103 F.Supp.2d at 54–55); and (8) this defense contention presents an issue, not controlled by any precedent precisely on point (103 F.Supp.2d at 54–57). On these findings and after full consideration of the relevant issues of law, including what I considered to be an issue of first impression, because not controlled by any precedent precisely in point, I concluded in the Opinion of June 27, 2000 (103 F.Supp.2d at 57–58) that I should allow Conley's motion for new trial on the ground that it would be in the interests of justice to do so for the following reasons:

For the reasons explained in Part V.A of this opinion, among the potentially decisive questions to be considered in deciding whether to grant a new trial in this case, grounded on the claim of newly discovered evidence, are questions that may be stated in the following form:

Did the prosecution have and withhold information from defense counsel that would have led a reasonable person to expect that a civil trial would occur, similar to the civil trial that did in fact occur after the criminal conviction and sentence in this case, and that the testimony at the civil trial would be substantially as we now know it was in fact? If so, were defense counsel so severely impeded in their preparation of an overall defense strategy and in the performance of the function of cross-examination of those particular witnesses, out of the larger number of police officers, including both uniformed and undercover officers, who were in the vicinity of the brutal beating of Michael Cox, an undercover Boston police officer, by a uniformed Boston police officer, that in the interests of justice a new trial should be allowed?

I find by a preponderance of the evidence that YES is the correct answer to the first question. In making this finding, I have taken into account not only the evidence in the public record of this case but also evidence that is before me under seal, and evidence not received at the trial of this case but called to my attention by the parties in their submissions as evidence accessible to the public as a result of media reports of the civil trial. In my present view, the evidence that I have considered that remains under seal at present should be placed on record in the Clerk's file in this case, open to public access, unless one or the other of the parties shows good cause

for keeping it under seal. Because party interests or public interests of which I am not now aware may be implicated, however, this evidence now under seal will remain under seal until the parties have had an opportunity to be heard.

The role that this sealed evidence has served in my consideration of the motion for new trial grounded on newly discovered evidence flows from the following characteristics of that evidence.

First, it strengthens a bit the reasons for inferring that at least one Boston police officer (the one who brutally struck Michael Cox from behind) knows the identity of the attacker because he knows he did it himself.

Second, it dramatically strengthens the reasons for inferring that one or more other Boston police officers saw the attacker inflict one or more of the repeated blows Michael Cox suffered.

Third, it dramatically strengthens the reasons for inferring that one or more observers has refused to come forward and disclose what he saw, out of a misguided purpose of protecting a fellow police officer from consequences that would flow from criminal charges of obstruction of justice and an unworthy purpose of protecting against economic and other consequences that would flow from internal police sanctions, loss of status and authority in the Boston police force, and loss of pay and benefits.

I find also that each of the first, second and third inferences identified above is strongly supported by the conflict in testimony that occurred at the Conley trial, explained in Part IV.B of this opinion. The newly discovered evidence, taken together with all the conflicts presented in evidence known to the defense before and during trial, presents a dramatically more compelling basis for finding that defense counsel's opportunity to present a creditable challenge to the government's case as a whole and to cross-examine effectively particular witnesses was severely impeded.

Having made these findings, I conclude that the answer to the second question stated above cannot be determined as a matter of law, under the applicable legal standard explained in Part III of this opinion. Instead, in the unique circumstances of this case, I conclude that the determination to allow or not to allow a new trial is one committed to an exercise of discretion by the court to which the legal system assigns responsibility for making the determination.

103 F.Supp.2d at 57–58.

This court's order of June 27, 2000 (Docket No. 122 in CR No. 97–10213–REK) (103 F.Supp.2d at 59), allowing Conley's motion for new trial, was reversed by the Court of Appeals for the First Circuit by a decision of May 11, 2001 (rehearing denied June 13, 2001), and, after a temporary stay to permit Conley to apply to the Circuit Justice for a stay (Docket No. 128 in CR No. 97–10213–REK), the Mandate terminating the stay of execution of the sentence during appellate proceedings was issued on July 2, 2001 and filed in this court on July 5, 2001 (Docket No. 130 in CR No. 97–10213–REK).

### III. Current Findings and Rulings

After consideration of the additional submissions and the oral arguments presented at the hearing of July 26, 2001, I make the following findings and state the following rulings of law.

■ (a) I find again, on the enlarged record now before me, as I did then find on the record that was before me on June 27, 2000, that:

(1) Richard Walker testified at the trial of defendant Conley that Walker went

through a hole in the fence and made his way to the bottom of an incline;

(2) when at the bottom of the incline he saw two men standing in the street, one tall (six feet or six feet two) and the other shorter (about my height, five nine);

(3) the prosecutor used this evidence in his closing to suggest that the taller was Conley;

(4) during testimony of March 27, 1995 to the Internal Affairs Division (IAD) of the Boston Police Department, Walker was shown a group of photographs and with some uncertainty selected two as persons at the bottom of the incline, neither of whom was Conley;

(5) defendant Conley claims that this evidence was unavailable to Conley and his attorney at the criminal trial;

(6) this and other material evidence came out in open court in the later trial of a civil action brought by Michael Cox against several officers, including the defendant Conley, in December 1998, some six months after the defendant was convicted in the criminal trial; and

(7) even though the testimony given at the December 1998 civil trial could not have been withheld by the prosecutor in the criminal trial, because it did not then exist, the defendant Conley argued in his motion for new trial and continues to press the argument now that the prosecutor had withheld, during and before the criminal trial, information that the prosecutor then had about the IAD proceedings, and if the prosecutor had made that information available to Conley and his attorney in time for use during the criminal trial, it would have made a material difference in the defense strategy, including cross-examination.

■ (b) The Court of Appeals for the First Circuit has held that the appropriate tests for determining whether this court should grant a new trial can be found in *United States v. Wright,* 625 F.2d 1017 (1st Cir.1980), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See *United States v. Conley,* 249 F.3d 38, 46 (1st Cir.2001). In my findings and conclusions at this time, I determine that a new trial is to be allowed under the *Wright* test, and because this determination controls the judgment to be ordered, I do not consider further the *Brady* test. Under *Wright,* a new trial is to be ordered if the following four elements are demonstrated by the moving party: (1) the evidence claimed to be newly discovered was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not attributable to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of defendant. 625 F.2d at 1019. *See also United States v. Gonzalez–Gonzalez,* 258 F.3d 16, 20 (1st Cir.2001).

Applying the *Wright* test, I determine, on the enlarged record now before me, that among the potentially decisive questions to be considered in deciding whether to grant a new trial based on newly discovered evidence, are the questions stated immediately below and the findings that follow, below:

Did the prosecution have and withhold information from defense counsel that would have led a reasonable person to expect that a civil trial would occur, similar to the civil trial that did in fact occur after the criminal conviction and sentence in this case, and that the testimony at the civil trial would be substantially as we now know it was in fact? If so, were defense counsel so severely impeded in their preparation of an overall defense strategy and in the performance of the function of cross-examination of

those particular witnesses, out of the larger number of police officers, including both uniformed and undercover officers, who were in the vicinity of the brutal beating of Michael Cox, an undercover Boston police officer, by a uniformed Boston police officer, that in the interests of justice a new trial should be allowed?

I find by a preponderance of the evidence that YES is the correct answer to each of these two questions. In making these findings, I have taken into account not only the submissions that were before me on June 27, 2000 but also the additional submissions filed after that date.

The newly discovered evidence before me in this case is material to decision of the motion to set aside the conviction of petitioner Conley and order a new trial for the following reasons:

First, it strengthens a bit the reasons for inferring that at least one Boston police officer (the one who brutally struck Michael Cox from behind) knows the identity of the attacker because he knows he did it himself.

Second, it dramatically strengthens the reasons for inferring that one or more other Boston police officers saw the attacker inflict one or more of the repeated blows Michael Cox suffered.

Third, it dramatically strengthens the reasons for inferring that one or more observers has refused to come forward and disclose what he saw, out of a misguided purpose of protecting a fellow police officer from consequences that would flow from criminal charges of obstruction of justice and an unworthy purpose of protecting against economic and other consequences that would flow from internal police sanctions, loss of status and authority in the Boston police force, and loss of pay and benefits.

I find also that each of the first, second, and third inferences identified above is strongly supported by the conflict in testimony that occurred at the Conley criminal trial. The newly discovered evidence, taken together with all the conflicts presented in evidence known to the defense before and during the criminal trial, presents a dramatically more compelling basis for finding that defense counsel's opportunity to present a creditable challenge to the government's case as a whole and to cross-examine effectively particular witnesses was severely impeded.

The preceding findings of facts lead me to conclude that the defendant has satisfied all four elements of the *Wright* test. It has been established that the defendant did not have access to the newly discovered evidence and that it was kept from him by prosecutors despite defendant's request. It is therefore clear that elements one and two of the *Wright* test have been met by the defendant. The third and fourth elements involve the degree of prejudice suffered by the defendant because of the unavailability of this evidence at trial. As also stated above, knowledge of the withheld evidence would have greatly enhanced defense counsel's ability to contest the prosecution's case and to cross-examine the prosecution's witnesses. I conclude that the newly discovered evidence is highly probative and neither immaterial nor cumulative in nature. Instead, it is evidence that strikes at the heart of the prosecution's case, one which is largely based on the credibility of its witnesses. Indeed, the strength of this evidence leads me to find that the defendant has met his burden of showing a probable result of acquittal in a new trial.

On these grounds, I will grant the motion to set aside the conviction for the reasons stated in this Memorandum, and

in consultation with attorneys for the parties will set a date for a new trial.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Petitioner's Motion to Set Aside Conviction (Docket No. 1) is ALLOWED, and the Clerk is directed to enter forthwith on a separate document a Final Judgment accordingly. A date for a new trial will be set in consultation with attorneys for the parties.

(2) Petitioner's Renewed Motion To Be Admitted To Bail (Docket No. 10) is ALLOWED. Until further order of a judge of this or a higher court, petitioner will remain on bail under the same conditions as previously ordered.